## ST. LOUIS-S. F. R. CO. v. SEARS.

No. 24717.    June 4, 1935.

Rehearing Denied Sept. 17, 1935.

E. T. Miller, Cruce & Franklin, and G. W. Satterfield, for plaintiff in error.

O. S. Huser, for defendant in error.

PER CURIAM. This suit was instituted by plaintiff in the district court of Hughes county, Okla., on February 24, 1932, for personal injuries. After the issues were joined and a trial was had on October 13, 1932, plaintiff obtained a verdict as against defendant in the sum of $12,000. From this judgment defendant prosecutes its appeal to this court.

The parties to this action will be referred to as plaintiff and defendant, as they appeared in the court below.

Plaintiff alleged that on August 17, 1931, he was an employee of the defendant, in that he was performing work on an "extra gang," and, without negligence or fault on his part, was, by the negligence of the defendant, seriously and permanently injured. That in performing said work he was obliged to use a pick, which was in bad repair, worn, dull and blunt, and that he was not furnished with a tool or instrument known as "tie tongs" by said defendant, 'and by the use thereof in driving said pick into a crosstie for the purpose of pulling same under the rails and track of defend- 'ant, the pick gave way causing plaintiff to lose his balance, throwing him backward with great force and violence, which wrenched and twisted the spine and the nerves of plaintiff's left arm and shoulder, causing a total paralysis of said shoulder and arm, and partially paralyzing plaintiff's body on the left side. Plaintiff alleged it was the duty of the defendant to exercise reasonabe care in providing a reasonably safe place for him to work and to provide him with safe, suitable, and proper tools, and that said pick was not a suitable and proper tool for use in such work. Plaintiff further alleged the usual and necessary grounds in order to recover, which are not necessary here to relate.

Defendant answered by a general denial, and further answered that if plaintiff was injured he was guilty of contributory negligence and that same was not attributable to it. Defendant answered by way of defense that plaintiff was an employee of the defendant; and the said injury to said plaintiff, if any occurred, was the result of the ordinary dangers incident to and arising from his employment and that said danger was assumed by him. To which answer the plaintiff filed a reply of general denial.

The defendant, in presenting its specifications of error, offers its first proposition as follows:

"The verdict of the jury is not supported by sufficient evidence, and the court should have directed a verdict in favor of this defendant."

The evidence of the plaintiff and his fellow workers, Lawyer, Weaver, and Long, was to the effect that in August, 1931, they were all employed as laborers by the defendant putting in crossties and surfacing its track south of Holdenville, and that they were furnished picks and shovels to do the work. All of them, including one Bagwell, testified in substance that a pick was not a safe, suitable, and proper tool to use in pulling in crossties, and that the safe, suitable, and proper tool for pulling in crossties was tie tongs; that there were no tie tongs available to do this work, and they were forced by the defendant to use picks.

Plaintiff testified that he complained to one John Reeder, who was foreman for defendant on the gang, that the pick furnished to him by the defendant to do the work was in a bad state of repair and was dull, badly worn, and would not hold. That the complaint was made a day or two before and on the day he was hurt. The foreman instructed him to go ahead and use it a few days until he could get some good picks and tie tongs. Lawyer, Weaver, and Long

testified that they heard the plaintiff complain to the foreman on Saturday before and on the day of the accident, and the foreman informed the plaintiff to go ahead and use the pick for a few days until the supply train would arrive.

Defendant rebutted this evidence by the testimony of one Bennie Thompson, who was plaintiff's colaborer during the entire day of August 17, 1931, and testified that he heard no complaint from plaintiff about the pick. The foreman, John Reeder, testified that the plaintiff made no complaint to him about the pick, and he made no promise of any kind to the plaintiff with reference to same. Defendant introduced a statement, prepared by defendant's claim agent but signed by plaintiff, which to some extent controverted plaintiff's oral testimony.

Plaintiff's witnesses, giving their experiences of several years as laborers, testified that tie tongs are the safe, suitable, and proper tools in replacing crossties. Defendant's witness, John Reeder, testified that his employer had him instruct all of his men in replacing ties to use tie tongs.

Other evidence introduced in the trial is not so hotly contested as the above, except that defendant asserts that the verdict was excessive. The evidence is conflicting, but is sufficient to support the verdict of the jury, and the issue as to whether the plaintiff complained to the defendant about the pick, and whether defendant promised to remedy same and furnish to the plaintiff safe, suitable, and proper tools, was within the province of the jury to decide. So we turn to the law to ascertain if the state of facts, as presented by the record, meets its requirements. It is admitted by the parties that this case was tried under the Federal Employers' Liability Act. 45 USCA sec. 51 et seq., approved April 22, 1908.

Defendant asserts the law to be that, under the authorities, both state and federal, a servant entering or continuing in the employment of a master assumes the risks and dangers of the service, and in the absence of a complaint, and it says there was none in this case, he is barred from recovery by reason of the fact that he knew the pick which he was using was dull and defective, yet he continued to use the same. But this issue was fairly submitted to the jury, and they have said by their verdict that the plaintiff did complain in the manner and form above stated, and that the defendant promised to remedy the matter complained

about. So the cases cited by the defendant in support of its deduction from the evidence that the plaintiff had made no complaint and the defendant made no promise, are not in point.

Then defendant's counsel, in their brief, say that the question involved in this suit resolves itself into this: "Was the complaint made by plaintiff, and the promise made by the master, sufficient in law to relieve plaintiff of the assumption of risk? We think it not sufficient."

The evidence in this case preponderates that a promise was made by the defendant to plaintiff for him to go ahead and use the pick until the supply train came in, which would be in a few days, and then he would get other picks and tie tongs. The defendant says that, granting that defendant did make the promise alleged to have been made, same was not sufficient in law to relieve the plaintiff of the assumption of risk, and in support of their contention cite, what they say, is the leading case on the subject, Gowen v. Harley, 56 Fed. 973. The law as announced in this case is applicable to the facts therein, but does not apply to the facts of the instant case. The facts in the Gowen Case were that an employee had requested of his employer certain skids to be used to slide a box from one car to another, but, notwithstanding the request as made, the employer failed to furnish the skids and the employee continued to perform the duty of moving the box daily for three months, and the court rightly held that because the employer had failed to comply with said request in a reasonable time, the employee assumed the risk of moving the box. Judge Sanborn, who handed down the opinion in the cited case, made this observation:

"If a servant who is aware of a defect in the instruments with which he is furnished notifies the master of such defect, and is induced, by the promise of the latter to remedy it, to remain in the service, he does not thereafter assume the risk from such defect until after the master has had a reasonable time to repair it, unless the defect renders the service so imminently dangerous that no prudent person would continue in it. Hough v. Railway Co., 100 U. S. 213, 225; Railroad Co. v. Young, 49 Fed. 723, 1 C. C. A. 423; Greene v. Railway Co., 31 Minn. 248, 17 N. W 378; Railway Co. v. Watson, 114 Ind. 20, 27, 14 N. E. 721, and 15 N. E. 824."

There are no facts in the instant case which show that the continued use of the

pick by plaintiff takes it out of the rule as announced in the above quotation.

We have examined the other authorities offered by defendant's counsel in support of their deduction, and we fail to find in any of them where the facts in those cases are similar to those in the case at bar.

This court has repeatedly held that where a master promises to remedy a defect, the servant does not assume the risk of injury therefrom by remaining in his employment for a reasonable time after such promise, and the question of whether plaintiff assumed the risk by remaining at work is for the jury. Chicago, R. I. & P. Ry. Co. v. Rogers, 60 Okla. 249, 159 P. 1132; St. Louis-S. F. Ry. Co. v. Henson, 118 Okla. 124, 247 P. 92; Midland Valley R. Co. v. Cox, 69 Okla. 123, 170 P. 485.

The case of St. Louis-S. F. Ry. Co. v. Henson, supra, was a case arising under the Federal Employers' Liability Act, and reviews the leading authorities on this question, including the case decided by the Supreme Court of the United States of Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 633, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

The holding of this court in the above cases is also thoroughly discussed in the case of Midland Valley R. Co. v. Cox, supra, in which this court quotes from the case of Chicago, R. I. & P. Ry. Co. v. Wright, 39 Okla. 84, 134 P. 427, as follows:

"Under all the facts disclosed by the evidence it was a question of fact for the jury to say whether plaintiff was guilty of contributory negligence; it is a rule very generally recognized that, where a master has knowledge of a defect, and promises to repair it, the servant may rely thereon, and continue to use the appliance for a reasonable time without assuming the risk of being guilty of contributory negligence in so doing, providing the danger is not so imminent that a reasonably prudent man would not continue to work therewith. * * * The promises need not be in direct words; but it is sufficient if it may fairly be inferred. * * * At common law it has been held a question of fact for the jury to determine, under all the circumstances of the case, whether upon continuing in the use of defective machinery, after notice to the master and a promise to repair, the injured party was guilty of contributory negligence. * * * In Hough v. Texas & Pacific Ry. Co., 100 U. S. 215, 25 L. Ed. 612. Justice Harlan in the syllabus enunciates the doctrine in the language following:

'"If the servant, having knowledge of a defect in machinery, gives notice thereof to the proper officer and is promised that such defect shall be remedied, his subsequent use of the machinery, in the belief, well grounded, that it will be put in proper condition within a reasonable time, does not necessarily or as a matter of law make him guilty of contributory negligence. It is for the jury to say whether he was in the exercise of due care in relying upon such promise and in using the machinery after knowledge of its defective or insufficient condition. The burden of proof in such a case is upon the company to show contributory negligence.' "

Counsel for defendant present for our consideration quite a number of authorities to show that a pick, commonly used by trackmen, is a simple tool, and that it was not the duty of defendant, under the law, to furnish plaintiff with safe tools and appliances, for the law did not apply to simple tools. However, this court has held that a promise that new or repaired tools would be obtained and furnished covers all tools, whether simple or complex. M , K. & T. R. Co. v. Highfill, 146 Okla. 84, 293 P. 182, certiorari denied (1931) 51 S. Ct. 483, 283 U. S. 834, 75 L. Ed. 1446. See Fischer v. Chicago, M. & St. P. Ry. Co. (Minn.) 191 N. W. 262; Swaim v. Chicago, R. I. & P. Ry. Co. (Iowa) 170 N. W. 296; Bevin v. Oregon-Washington R. & Nav. Co. (Ore.) 298 P. 204.

Defendant, for its second propositition, contends that the trial court erred in giving its instructions numbered 8, 9, 10, and 20 to the jury, and for the sake of brevity we shall not set out the instructions in full, but shall use the language employed by defendant's counsel in their original brief at page 162, and referring to the matters complained of as set out on said page:

"In instruction No. 8, the trial court also used the following expression: 'He should be furnished with reasonably safe tools in which to perform his work for the master;' and again in the same instruction he uses the following expression: 'or the failure of the master to provide his servant with reasonably safe tool': and again in instruction No. 9, the following expression: 'Unless you further find by a preponderance of the evidence that the tool furnished by the master to his servant was not a reasonably safe tool'; and again, in instruction No. 10, the following expression: 'and that the failure of the defendant to furnish a reasonably safe tool to this plaintiff'; and again in instruction No. 20: 'and that it is only necessary that the employer furnish to his employee, reasonably safe tools to do the work.'

"Nowhere in the instructions was the jury told that it was the duty of the master to

exercise ordinary care in, furnishing the plaintiff reasonably safe tools with which to do his .work."

But we find in the trial court's instruction No. 19 the following:

"You are further instructed that if you find from the evidence that the defendant used ordinary care in selecting reasonably safe tools or tool, furnished the plaintiff to work with, and that the tool, so furnished, was reasonably safe to be used in such work, and that plaintiff used ordinary care .in the performance of said work, and this duty was performed upon the part of the plaintiff, and the defendant, and that by reason of said work the plaintiff was injured as stated in his petition, this would be an unavoidable accident and your verdict should be for the defendant."

The court also gave an instruction that all of the instructions must be considered as a whole and that the jury would have no right to consider part or parts of same to the exclusion of the other portions thereof. We think that these instructions as given are fully sustained by this court in Midland Valley R. Co. v. Cox, supra, and in the case of McCabe & Steen Construction Co. v. Wilson, 17 Okla. 355, 87 P. 320.

We next give our attention to the third proposition of the defendant, which is:

"The trial court erred in giving its instruction No. 18 to the jury."

This instruction reads as follows:

"You are further instructed that although you may believe from the evidence and by a preponderance thereof, that the plaintiff was guilty of contributory negligence at the time he received the injuries as alleged in his petition, and you further believe by a preponderance of the evidence that the defendant was guilty of primary negligence and that both plaintiff and defendant were guilty of negligence as herein defined to you, this will not bar a recovery by plaintiff against the defendant, but by reason of the negligence of the plaintiff and the negligence of the defendant, the damage may be diminished by the jury in proportion to the amount of negligence attributed to the plaintiff and the amount of negligence attributed to the defendant. Excepted to by defendant. Exception allowed. _____, Judge."

Defendant says there can be no doubt but that in giving this instruction the court committed prejudicial error, for the instruction left to the jury whether or not they would diminish the damages under the Federal Employers' Liability Act. In the language of the instruction the court used these words: "The damage may be diminished by the jury," whereas the act itself provides that: "The damages shall be diminished."

Section 53 USCA, title 45, which is part of the Employers' Liability Act (sec. 3) reads as follows:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

In considering this proposition we are first met by the challenge of plaintiff's counsel that the defendant failed to except to the giving of this instruction and that the court failed to sign same. While, on the other hand, defendant's counsel contend that the court signed exceptions to instructions 3, 4, 5, 6, 7, 8, 9. 10. and 11. but arbitrarily refused to sign 18 notwithstanding that they had excepted to the instruction. However, we shall not decide this point, but, for the purpose of this case, we shall treat the same as duly excepted to by the defendant.

The defendant complains that this instruction is bad, for the court should not have used the verb "may," but should have used the verb "shall," and cite in support of its contention a large array of authorities. These citations sustain the defendant on the use of the words, but the same do not apply to the facts in this case, for there is no evidence that plaintiff was guilty of contributory negligence. These citations apply to cases where there was evidence that both parties were guilty of negligence. We conclude that the trial court committed no error in giving this particular instruction for the same was harmless.

Defendant's counsel say: "We think there is no doubt but that plaintiff was guilty of contributory negligence under his own evidence. He testified. that he knew the pick he was using was defective but continued to use the same." But this testimony constitutes no proof of contributory negligence by plaintiff but relates only to the assumption of risk by him. Chicago, R. I. & P. Ry. Co. v. Rogers, supra; Seaboard Air Line Ry. Co. v. Horton, supra; Cassin v. Lusk (Mo.) 210 S. W. 902. In the Seaboard Case the Supreme Court of the United States said:

"Contributory negligence involves the notion of some fault or breach of duty on the part of the employee, and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is some times defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. * * *"

In Cassin v. Lusk, supra, which defendant has cited as an authority, we find the following language:

"Hence the only question is whether or not it constituted reversible error under the testimony in this record bearing on the question of contributory negligence of the plaintiff. If the record discloses any facts or circumstances which would have warranted a finding by the jury that the plaintiff was guilty of negligence directly contributing to his own injuries, then this judgment would have to be reversed under the terms of the federal statute applicable to the duty of the jury in cases of joint negligence. Sec. 3, Act April 22, 1908, 35 Stat. 65, c. 149 U. S. Comp. Stat. 1916, sec. 8659. Of course, if upon the conceded facts no inference of negligence on the part of the plaintiff is legally deducible, then the instruction under review is harmless. * * * Nor have we been able to find any evidence tending to show any negligence on the part of the plaintiff which contributed to his falling from the top of the car while he was drawing up the hose in order to fill the coolers."

The next proposition for us to consider is proposition 4, as presented by defendant, which is:

"The damages in this case are excessive and appear to have been given under the influence of passion and prejudice, on the part of the jury."

Defendant's counsel do not cite any authorities in support of this proposition, but say that "each case must be determined upon the facts in the particular case, and even though there have been numerous cases holding such a verdict excessive, we think this court must decide this case wholly from the facts as disclosed by the case-made." The facts as disclosed by the record justify the holding that the judgment herein is not excessive. Missouri, K. & T. Ry. Co. v. Smith, 97 Okla. 152, 223 P. 373; Alva Roller Mills v. Simmons, 74 Okla. 314, 185 P. 76.

We now come to defendant's fifth and last proposition:

"Error was committed by the trial court in permitting incompetent, irrelevant, and immaterial evidence over the objection and exception of this defendant."

This proposition is predicated on the testimony of plaintiff himself and his witnesses, Long, Weaver, and Bagwell, to the effect that the pick was not a safe, suitable, and proper tool to use in pulling crossties, but that the safe, suitable, and proper tool for that purpose was tie tongs, which defendant says was prejudicial. It cannot be said the evidence was prejudicial to the defendant itself, when its witness, John Reeder, identified a book of rules relating to maintenance of the right of way for the defendant, in which book he also identified rule 708, which rule was in effect August 17, 1931, and which read as follows:

"Treated ties must be handled with tongs in placing in the track, when possible"

—and that Reeder testified that he instructed all his men in replacing ties to use tie tongs. We think from the evidence of the defenlant alone the jury could have made the finding that the pick was not a safe, suitable, and proper tool to use.

Neither do we think the cross-examination of defendant's witness Blevins, its claim agent and a lawyer by profession, was prejudicial to it, when he answered in the affirmative that he was familiar with the law that the employer must provide safe and proper tools for the employee. The record does not disclose that this witness testified, on cross-examination, to any other matter which the defendant might complain of as being prejudicial to it in the trial. However, it seems that on cross-examination this witness was asked many questions concerning the matter about which defendant complains, but on objection by defendant's counsel they were not permitted by the court to be answered.

In the brief of the defendant, it says that the court permitted the witness Blevins, on cross-examination, over their objections, to testify as to what was "his conception of the law covering the relationship of master and servant in Missouri and Oklahoma," but we fail to find any evidence of that kind in the record. The fact that Blevins said he was familiar with this particular law and gave no testimony whatever as to what constitutes the safe and proper tools thereunder, was not, in our opinion, prejudicial to the defendant. The case offered in support of its proposition, Federal Oil & Gas Co. v. Campbell, 65 Okla. 49, 183 P. 894, is not controlling, because the rule is stated

therein that a witness should not be allowed to give an opinion as to the existence of an ultimate fact, while in the case at bar the witness Blevins stated the fact that he was familiar with the law in question, but did not attempt in his answer to say what the law was, nor did he attempt to elucidate and apply same to the questions then before the court.

In the Federal Oil & Gas Case the witnesses were permitted to testify to opinions as to the ultimate facts of that particular case, which the court says was prejudicial, but in this same case the court says that witnesses should have stated the facts within their knowledge and not their opinions. Blevins testified, as stated, that he was familiar with this law, but nowhere did he attempt to give his opinion as to what it was or that it did, or did not, apply to the facts of the instant case. In the Federal Oil & Gas Case this court cites with approval the rule as announced in Ann. Cas. 1913C, 1077, as follows:

" 'The general rule is, as stated in the reported case (Pointer v. Klamath Falls Land Co. [Ore.] 177 P. 605), where the ultimate fact for the jury is whether the conduct of a certain person was careless, reckless, or negligent, it is not competent for a witness to express an opinion, conclusion or judgment. * * *'

" 'The general rule of law is that witnesses must state facts within their knowledge, and not give their opinions or their inferences. To this rule there are some exceptions, among which is expert evidence. Witnesses who are skilled in any science, art, trade, or occupation may not only testify to facts but are some times permitted to give their opinions as experts'."

We conclude that the defendant was given a fair trial, and that the trial court committed no prejudicial error, and that the verdict of the jury was not excessive, and that the judgment of the lower court be affirmed. It is so ordered.

The Supreme Court acknowledges the aid of Attorneys Hulette F. Aby, W. D. Abbott, and Wm. O. Beall in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Aby and approved by Mr. Abbott and Mr. Beall, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.